William **KREGLER**, Plaintiff,

v.

**CITY OF NEW YORK**
**et al., Defendants.**

No. 08 Civ. 6893(VM).

United States District Court,
S.D. New York.

March 9, 2011.

Nathaniel B. Smith, Law Office of Nathaniel B. Smith, New York, NY, for Plaintiff.

Christopher Aaron Seacord, New York City Law Department, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff William Kregler ("Kregler") brought this action pursuant to 42 U.S.C. § 1983 ("§ 1983") against the City of New York ("City") and individual defendants ("Individual Defendants") Louis Garcia ("Garcia"), Rose Gill Hearn ("Hearn"), Keith Schwam ("Schwam"), Darren Keenaghan ("Keenaghan"), Brian Grogan ("Grogan"), and Jayme Naberezny ("Naberezny"). The Individual Defendants at all relevant times were employees of the City's Fire Department ("FDNY") or Department of Investigation ("DOI"). Hearn, Schwam, Keenaghan, and Grogan now move pursuant Rules 12(b)(1), (b)(4) and (b)(6) of the Federal Rules of Civil Procedure ("Federal Rules") to dismiss Kregler's Second Amended Complaint[1] for failure to state a claim. In addition, Naberezny moves to dismiss the Seconded Amended Complaint as time barred. Finally, Kregler cross-moves to preclude the defendants from offering certain evidence or to strike the answer of the City and Garcia.[2] For the reasons stated below, the Court DENIES Kregler's motion and converts the motion of Hearn, Schwam, Keenaghan, Grogan, and Naberezny to dismiss the Second Amended Complaint to a motion for summary judgment pursuant Rule 12(d) and defers decision on that motion pending additional briefing by the parties.

---

1. Although entitled "First Verified Amended Complaint," the operative pleading, dated July 9, 2010, is actually the second amended complaint filed by Kregler. Accordingly, for the sake of accuracy, it will be referred to as the "Second Amended Complaint" or "Compl."

2. The Individual Defendants submitted a Memorandum of Law in Support of Gill Hearn, Schwam, Keenaghan, Grogan and Naberezny's Motion to Dismiss the First Verified Complaint, dated August 13, 2010, and a Re-

ply Memorandum of Law in Further Support of Defendants Naberezny, Gill Hearn, Schwam, Keenaghan, and Grogan's Motion to Dismiss the First Verified Complaint and in Opposition to Plaintiff's Cross–Motion for an Order to Preclude the Defendants from Offering Certain Evidence or Striking the Answer, dated October 12, 2010. Kregler submitted his Memorandum of Law in Opposition to Motion to Dismiss on September 17, 2010 ("Pl. Mem.").

## I. BACKGROUND [3]

In March 2004, one month after retiring from his position as Fire Marshal with the FDNY after being employed there for 20 years, Kregler filed a preliminary application for appointment by the City's Mayor as a City Marshal. Candidates for appointment as City Marshals are subject to an investigation by DOI of their personal and financial background and must complete a DOI-administered training program. In January of 2005, Kregler was interviewed by representatives of the Mayor's Committee on City Marshals and was later notified by Schwam, an Assistant Commissioner at DOI, that DOI would commence its personal and financial review of Kregler's background. As a follow-up, Kregler met in April of 2005 with Keenaghan, a DOI investigator, to discuss Kregler's preliminary application. Kregler then made minor modifications to the application, signed the revised form, and provided authorizations for release of his personal information.

On May 25, 2005, Kregler, in his capacity as President of the Fire Marshals Benevolent Association, publicly endorsed the candidacy of Robert Morgenthau ("Morgenthau") for reelection as District Attorney for New York County. At that time, all other law enforcement associations in the City, including two unions of firefighters, supported Morgenthau's opponent, Leslie Crocker Snyder ("Snyder"). An article that appeared in a June 2005 edition of *The Chief,* a local newspaper, reported on Kregler's endorsement of Morgenthau. Grogan, an FDNY Supervising Fire Marshal, posted a copy of that article in a public area within one of the FDNY offices. Kregler alleges that Grogan then "berated" him for the endorsement, stating: "who the f— do you think you are. Louie [Garcia] makes the endorsement." (Compl. ¶ 29.) At the time of that incident, Garcia was the Chief Fire Marshal of the FDNY's Bureau of Fire Investigation. Both Garcia and Grogan supported Snyder's political campaign against Morgenthau.

On July 7, 2005, Kregler was interviewed by staff of the Mayor's Office in connection with his Fire Marshal application and the following day was told by Schwam that the next step in the process would be the completion of the DOI background check. To that end, Kregler met a second time with Keenaghan to update and refile his application. In September of 2005, Kregler and four other candidates began the DOI training classes, which Kregler successfully completed in October of 2005. In November 2005, Kregler satisfied the last requirement for appointment by demonstrating his ability to obtain a bond. In March of 2006, Kregler was informed by letter from Schwam that he would not be appointed as a City Marshal.

Kregler filed this action in August of 2008, raising a claim of First Amendment retaliation in violation of § 1983. Kregler contends that the explanation proffered to him for the denial of his application—Kregler's failure to disclose details of a Command Discipline he had received in 1999 during his employment by the FDNY—was merely a pretext for defendants' unlawful retaliation. On December 2, 2008,

---

**3.** The factual summary that follows derives primarily from the recitation of the pertinent pleadings and other matters of record set forth in the Court's Decision and Order, dated August 17, 2009, *see Kregler v. City of New York,* 646 F.Supp.2d 570 (S.D.N.Y.2009), as supplemented by additional relevant facts pre-sented in the Second Amended Complaint. The Court accepts these facts as true for the purposes of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 180 (2d Cir.2008). Unless specifically referenced, no further citation to these sources will be made.

defendants moved to dismiss the first amended complaint, dated November 14, 2008 ("First Amended Complaint"), asserting failure by Kregler to state a claim upon which relief could be granted. By Decision and Order dated March 16, 2009, the Court deferred ruling on the motion to dismiss pending the outcome of a preliminary hearing pursuant to Rule 12(i) of the Federal Rules ("Rule 12(i) Hearing"). The Court conducted that proceeding on July 16, 2009 and heard the parties' further oral arguments on July 18, 2009. On August 14, 2009, by Decision and Order, the Court dismissed the First Amended Complaint in its entirety. Kregler appealed and, on May 3, 2010, the United States Court of Appeals for the Second Circuit issued a summary order ("Summary Order") vacating the order of dismissal and remanding the case to this Court for further proceedings. *See Kregler v. City of New York,* 375 Fed.Appx. 143, 144 (2d Cir.2010).

On July 9, 2010, Kregler filed his Second Amended Complaint in which, among other things, he added Naberezny, an Inspector General for the DOI, as a defendant. In particular, Kregler now alleges that Garcia was "personally and socially acquainted" with Naberezny (Compl. ¶ 40) and that the two "agreed to cause Kregler's application for appointment as a City Marshal to be rejected by DOI in retaliation for Kregler's support of Morgenthau." (Compl. ¶ 43.)

## II. *LEGAL STANDARDS*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

To state a claim for First Amendment retaliation under § 1983, Kregler must allege facts that, if proven, could establish that: (1) he engaged in constitutionally protected speech; (2) he suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action "so that it can be said that the speech was a motivating factor in the determination." *Washington v. County of Rockland,* 373 F.3d 310, 320 (2d Cir.2004) (*citing Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir. 1999)).

Additionally, a complaint that asserts claims pursuant to § 1983 against individual defendants must allege facts that could support a reasonable inference that each named defendant was personally involved in the constitutional deprivation. *See Feingold v. New York,* 366 F.3d 138, 159 (2d Cir.2004) ("A finding of 'personal involvement of [the individual] defendants' in an alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983." (citations omitted)). A plaintiff pleading personal involvement must allege at least one of the following five courses of conduct:

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation ... failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

## III. DISCUSSION

### A. CLAIMS AGAINST HEARN

■ Hearn argues that the claims against her must be dismissed because Kregler's counsel admitted on the record at the Rule 12(i) Hearing that there is no factual basis for alleging Hearn was aware of any retaliatory action taken against Kregler. "[A]bsent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission." *Haywood v. Bureau of Immigration,* 372 Fed.Appx. 122, 124 (2d Cir.2010). At the Rule 12(i) Hearing, Kregler's counsel stated:

> [s]o what I have here is a situation where I think I've named the wrong defendant. And, in fact, I would like to make an application to the Court to substitute in Naberezny for Gill Hearn because it looks to me like the discussion, the understanding about Kregler not becoming a sheriff that was had, was had between Naberezny and Garcia and not between Garcia and Gill Hearn.

(Hr'g Tr. 26, July 28, 2009.)

■ Because Hearn relies upon materials outside the pleadings, the Court finds it appropriate to convert Hearn's motion to dismiss into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules. When matters outside the pleadings are presented in connection with a motion to dismiss, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000) (internal quotation marks and citations omitted).

■ The Court's preliminary view is that the statements of Kregler's counsel amount to a judicial admission that has a binding effect on all future proceedings. Kregler contends that his counsel's statements constituted an observation rather than a judicial admission and that his counsel was merely speculating that, after learning that it was Naberezny, not Hearn, who had a relationship with Garcia, he erred in "naming Gill Hearn as a defendant *on that basis.*" (Pl. Mem. at 8.) Kregler further asserts that other "testimony and documents introduced at the Hearing raise serious questions about Gill Hearn's liability" that are sufficient to withstand a motion to dismiss. (*Id.* at 8–9.) Based upon a review of the pleadings, the Court is not persuaded that Kregler has made such a showing. However, both parties will be afforded an opportunity to present additional materials outside the pleadings that they believe are pertinent to the motion for summary judgment on the issue of whether the statements of Kregler's counsel at the Rule 12(i) Hearing require a dismissal of the claims against Hearn.

### B. CLAIMS AGAINST SCHWAM AND KEENAGHAN

■ Kregler alleges that Schwam and Keenaghan knew that the City's stated reason for terminating his application was false, but "deliberately decided to look the other way." (Compl. ¶ 49.) Schwam and

Keenaghan contend that these allegations are insufficient to a state a claim against them because Kregler has failed to plead facts that could support a plausible inference that they had any knowledge that an unconstitutional act was occurring. Rather, Kregler would need to allege sufficient facts that Schwam and Keenaghan had knowledge regarding the purported agreement between Naberezny and Garcia to violate Kregler's constitutional rights.

Additionally, Schwam and Keenaghan contend that an individual who lacks the authority to remedy or "take action with respect to any constitutional violation" cannot be found to be personally involved. *Koulkina v. City of New York*, 559 F.Supp.2d 300, 317 (S.D.N.Y.2008). The Court agrees that because Keenaghan and Schwam were not supervisors of Naberezny, they lacked the authority to prevent the alleged constitutional violation at issue. *See, e.g., id.; Keesh v. Goord*, No. 04 Civ. 271A, 2007 WL 2903682, at *6 (W.D.N.Y. Oct. 1, 2007) (finding no personal involvement where defendant who oversaw prisoner grievances only signed determination made by the committee on plaintiff's grievance but did not have voting power regarding that decision); *Brody v. McMahon*, 684 F.Supp. 354, 355 (N.D.N.Y.1988). As such, the claims against them should be dismissed because they were not the ultimate decision makers regarding the appointment of Kregler as a City Marshal.

■ Kregler, on the other hand, argues that the Second Circuit has already rejected Schwam's and Keenaghan's arguments relating to their lack of personal involvement or authority to remedy the constitutional violation. Thus, he contends that under the "law of the case" doctrine, the Court must reject those arguments here. "The 'law of the case' doctrine is a rule of practice followed by New York courts that dictates that 'a decision on an issue of law

made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.' " *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 218 (2d Cir.2002) (citations omitted).

In its Summary Order, the Second Circuit stated: "[w]e have considered all of defendants' contentions in support of the Rule 12(b)(6) dismissal and have found them to be without merit." *Kregler*, 375 Fed.Appx. at 144. The Second Circuit, however, did not specify in its ruling what arguments were raised in support of defendants' previous motion to dismiss. Based upon a review of the parties' submissions, the Court is unable to determine which, if any, of Schwam's and Keenaghan's arguments may be foreclosed under the "law of the case" doctrine. This analysis requires a review of the parties' appellate briefs, which are not properly before the Court. As is the case with Hearn's instant motion, the Court converts Schwam's and Keenaghan's motion to dismiss into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules. The parties are directed to submit additional briefing and materials specifically relating to the issues raised and considered on appeal so that the Court may determine whether the "law of the case" doctrine is applicable here.

Even if the Court finds that the "law of the case" doctrine does not apply, Kregler contends that the Second Amended Complaint alleges additional facts regarding Keenaghan and Schwam's personal involvement that are sufficient to defeat their motion to dismiss. The Court disagrees. As mentioned above, the Court is not persuaded that Schwam, who ultimately reported to Hearn, and Keenaghan, who ultimately reported to Schwam, were in a position to prevent the alleged constitu-

tional violation at issue.[4] *See Koulkina,* 559 F.Supp.2d at 317. (*See* Compl. ¶¶ 7, 8.)

## C. *CLAIMS AGAINST GROGAN*

■ Grogan asserts that Kregler's allegations that Grogan was upset about Kregler's endorsement of Morgenthau and that he and Garcia "agreed to take steps to prevent Kregler's appointment in retaliation for Kregler's endorsement" (Compl. ¶¶ 29, 39) are insufficient to state a claim upon which relief can be granted.

The Court finds that even if Grogan was aware of the unconstitutional violation, he lacked the authority to take action to remedy the wrong and thus cannot be held liable. *See Koulkina,* 559 F.Supp.2d at 317. Kregler once again contends that because the Second Circuit has already addressed the issue of Grogan's personal involvement, the Court is barred from considering those arguments here.

Although the Court is mindful that it is required to consider whether the Second Circuit's decision has any bearing on Grogan's claims, the Court is not persuaded that Grogan, an employee of the FDNY, can be held personally liable for a final decision made solely by the DOI Commissioner. Nevertheless, the Court converts Grogan's motion to dismiss into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules to allow the parties to submit additional briefing and materials specifically relating to whether the Second Circuit already considered and decided the issues raised by Grogan here.

## D. *CLAIMS AGAINST NABEREZNY*

■ Naberezny argues that the claims against her are time barred. Section 1983 claims have a three-year statute of limitations. *See Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). "[T]he timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision, not from the date the decision takes effect." *O'Malley v. GTE Serv. Corp.,* 758 F.2d 818, 820 (2d Cir.1985); *see also Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002). Kregler alleges that the decision to terminate his application for the position of City Marshal occurred on or about November 14, 2005, and that he was informed of that decision on March 10, 2006. Yet it was not until his filing of the Second Amended Complaint on July 9, 2010, more than three years after the alleged violation occurred, that Kregler first attempted to name Naberezny as a defendant. Therefore, the claims against Naberezny are untimely and must be dismissed unless those claims "relate back" to the claims asserted in the initial complaint.

■ In order for a complaint that adds a new defendant to relate back to the original complaint for limitations purposes,

---

4. Kregler also argues that even if Keenaghan and Schwam are subordinates, as law enforcement officers, they have a duty to intervene. Furthermore, Kregler contends that as City employees, Keenaghan and Schwam have an affirmative duty to intervene to prevent an illegality under the Mayor's Executive Order 16. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988). An examination of the cases relied upon by Kregler reveals that Keenaghan and Schwam are not the type of "law enforcement officers" to which this principle is meant to apply. Additionally, the type of unconstitutional acts at issue in the authorities Kregler cites involved false arrest, excessive force, or related torts committed against the actual person of the individual, not the type of injury alleged here. Accordingly, the Court finds the rule that law enforcement or City employees have a duty to intervene to prevent a constitutional violation is inapplicable to the case at bar.

the following requirements must be satisfied: (1) both complaints must arise out of the same conduct, transaction, or occurrence; (2) the additional defendant must have been omitted from the original complaint by mistake; and (3) the additional defendant must not be prejudiced by the delay. Fed.R.Civ.P. 15(c)(1). Rule 15(c) of the Federal Rules ("Rule 15(c)") also requires that the new defendant have actual or constructive knowledge that she would have been named but for the plaintiff's mistake. *See Tsering v. Wong,* No. 08 Civ. 5633, 2008 WL 4525471, at *6 (S.D.N.Y. Oct. 3, 2008).

> The notice required must be such that a reasonably prudent person ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction or occurrence set forth in the original pleading might be called into question.

*Id.* (*citing Pemrick v. Stracher,* No. 92 Civ. 959, 2005 WL 2921621, at *7 (E.D.N.Y. Nov. 4, 2005)).

In his initial and First Amended Complaint, Kregler advanced the theory that it was the personal relationship between Hearn and Garcia that provided the impetus by which the two of them allegedly agreed to reject Kregler's application for City Marshal in retaliation for supporting Morgenthau. Once Kregler conceded at the Rule 12(i) Hearing that Hearn and Garcia did not maintain the close personal relationship Kregler had alleged, he asserted in the Second Amended Complaint that it was Naberezny who had the relationship with Garcia and had colluded with him to cause the denial of Kregler's ap-

pointment. Kregler thus proceeded to substitute Naberezny's name for Hearn's in the Second Amended Complaint.[5]

Kregler claims that he has satisfied all three elements of the Rule 15(c) test. First, Kregler argues that the initial complaint and the two amended complaints all relate to the same conduct. Second, Kregler contends that he was mistaken as to the relationship between Garcia and Hearn and learned of this oversight only after testimony was introduced on the issue at the Rule 12(i) Hearing. Finally, Kregler asserts that Naberezny does not offer any evidence of prejudice and that she "surely knew that Kregler mistakenly believed that Hearn had the close relationship with Garcia precisely because she was the one with the close personal relationship with Garcia, not her boss." (Pl. Mem. at 18.) Kregler further argues that Naberezny's silence on this issue "proves the point that she knew that, but for Kregler's mistake, she would have been named as a defendant in the initial complaint." (*Id.*)

While arguably Kregler's amended pleadings may be sufficient to satisfy the first and second prongs of the Rule 15(c) test, it is not clear on the current record whether Naberezny has been prejudiced by the delay. Accepting the factual allegations in the Second Amended Complaint as true, the Court must assume that Garcia and Naberezny agreed to cause the rejection of Kregler's application. *See Iqbal,* 129 S.Ct. at 1950. Although Naberezny was not identified by name or title anywhere in the initial complaint or the First Amended Complaint, accepting that she was the one who made the purported agreement with Garcia, she "ought to have been able to anticipate or should have

---

5. The Second Amended Complaint now states that "Naberezny and Garcia are personally and socially acquainted" (Compl. ¶ 40) and they "agreed to cause Kregler's application for appointment as a City Marshal to be rejected by DOI in retaliation for Kregler's support of Morgenthau." (Compl. ¶ 41.)

expected" that Kregler might amend his complaint to correctly substitute her name for Hearn's. *Tsering,* 2008 WL 4525471, at *6. This argument, however, prevails only if Naberezny had the knowledge asserted in the initial or First Amended Complaint concerning Kregler's endorsement of Morgenthau and Garcia's alleged retaliatory motive on that account. A plausible basis for the allegation is not supported by the current pleadings and relevant record.

The Court, therefore, directs the parties to engage in discovery limited to the sole issue of whether Naberezny had actual or constructive knowledge of this action and of her alleged role in it within the time period of the applicable statute of limitations such that she could have reasonably expected that she might be named as a defendant. Accordingly, the Court finds it appropriate to convert Naberezny's motion to dismiss into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules to allow the parties to submit materials outside the pleadings related to the issue at hand.

## IV. *CROSS–MOTION TO PRECLUDE OR STRIKE THE ANSWER*

In addition to opposing the motion to dismiss, Kregler has cross-moved to preclude the defendants from offering certain evidence or to strike the answer of the City and Garcia because they have failed to respond to discovery demands.

Rule 37.2 of the Local Civil Rules ("Rule 37.2") provides that:

> No Motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the court and such request has either been denied or the discovery dispute has not been

resolved as a consequence of such a conference.

Local Civil Rule 37.2. Because Kregler has not complied with Rule 37.2, nor provided any justification as to why such a drastic remedy is warranted at this time, the Court denies his motion.

## V. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that pursuant to Rule 12(d) of the Federal Rules of Civil Procedure ("Federal Rules")/ the Court hereby gives the parties notice of its intention to convert the motion to dismiss (Docket No. 43) of defendants Jayme Naberezny ("Naberezny"), Rose Gill Hearn, Keith Schwam, Darren Keenaghan, and Brian Grogan ("Defendants") to a motion for summary judgment under Rule 56 of the Federal Rules; and it is further

**ORDERED** that the parties are directed to confer and, by March 16, 2011, submit to the Court for approval a briefing schedule for any opposition and reply briefs (the "Summary Judgment Papers") that the parties intend to file, which shall not exceed fifteen (15) pages in length. Any additional materials pertinent to Defendants' motion for summary judgment shall be submitted in accordance with Rule 56(e) of the Federal Rules and Rule 56.1 of the Local Rules of Civil Procedure for this District; and it further

**ORDERED** that plaintiff William Kregler ("Kregler") and Naberezny are directed to engage in limited discovery on the sole question of whether Naberezny had actual or constructive knowledge of the instant action and of her alleged role in it within the time period of the applicable statute of limitations consistent with this Decision and Order. Any additional materials or briefing relevant to the issue regarding Naberezny's knowledge shall be

included in the Summary Judgment Papers; and it is finally

**ORDERED** that the motion (Docket No. 49) of Kregler to preclude the Defendants from offering certain evidence or to strike the answer of the City of New York and Louis Garcia is DENIED.

**SO ORDERED.**